IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CR3085 |
| | ) | |
| v. | ) | |
| | ) | |
| FELIPE DEJESUS GALLARDO, | ) | MEMORANDUM AND ORDER ON THE |
| | ) | DEFENDANT'S OBJECTIONS TO THE |
| Defendant. | ) | MAGISTRATE JUDGE'S REPORT AND |
| | ) | RECOMMENDATION |

The defendant, Felipe DeJesus Gallardo, has moved to suppress evidence that was obtained by law enforcement officers who stopped, searched, arrested, and interrogated him on July 2, 2005.  (See filings 24, 25.)  A hearing on the defendant's motions was held before United States Magistrate Judge David L. Piester on January 5, 2006, (see filing 34), and, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the magistrate judge has recommended that I deny the defendant's motion to suppress, (see filing 37).  Now before me are the defendant's objections to the magistrate judge's report and recommendation.  (See filing 39.)  In the course of my de novo review of those portions of the magistrate judge's report that the defendant challenges, see United States v. Lothridge, 324 F.3d 599, 600 (8th Cir. 2003); 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b), I have studied the magistrate judge's report and recommendation; the transcript of the January 5 hearing; the exhibits received into evidence at the hearing (see filing 35); and the briefs submitted by the defendant in support of his motions to suppress and his objection to the report and recommendation (see filings 30, 31, 39).[1]  The magistrate judge's report is well-reasoned and quite thorough, and I shall adopt it in its entirety.  The defendant's objections will be overruled, and his motions to suppress will be denied.

---

[1]The government submitted no brief in opposition to the defendant's motions or in response to the defendant's objections to the magistrate judge's report and recommendation.

1

## I.    BACKGROUND

The relevant facts are summarized in the magistrate judge's thorough report, and need not be repeated here in detail.[2]  Briefly, on July 2, 2005, Trooper Greg Goltz of the Nebraska State Patrol (NSP) stopped the defendant's vehicle on the shoulder of the eastbound I-80 entrance ramp near Highway 41B after he noticed that the defendant's vehicle had no license plates nor visible "in transit" stickers.  During the course of this stop, the trooper discovered several facts that caused him to suspect that the defendant might be carrying illegal drugs.  Specifically, he noted that the defendant was traveling on Interstate 80 from California to Sioux City, Iowa, which is a large Midwest distribution center for drugs transported from Arizona and California; that the defendant exited the interstate without a credible reason at a location near signs warning of an upcoming drug interdiction checkpoint; that the defendant's vehicle accumulated a large number of miles in a very short period of time; that the defendant's current California address had previously been associated with a large methamphetamine conspiracy; that the bed of the defendant's pickup truck contained boxes that he believed to be "props"; and that the defendant gave vague and inconsistent information about his plans to reside in either California or Sioux City.  (See Report, Recommendation and Order, filing 37, at 9-10; see also Tr., filing 38, at 54:18-55:22.)  Trooper Goltz returned the defendant's paperwork, provided the defendant with a violation card concerning the license plates, and explained the procedure that the defendant must follow to clear the violation.  The defendant, who had been sitting next to the trooper in the trooper's patrol car for much of the encounter, then opened the door of the patrol car and began to step outside.  At this point, the trooper asked the defendant, "Do you have a minute?"  The defendant responded, "Okay," and returned to his previous position in the passenger seat of the patrol car.  The trooper then asked the defendant, whose knowledge of English is limited, a series of questions concerning the trafficking of drugs and guns before the following exchange occurred:

---

[2]Indeed, the defendant states that he "generally accepts the Magistrate[] [Judge's] recitation of facts in this case with noted exceptions."  (Def.'s Objection to Magistrate [Judge's] Report and Recommendation (hereafter "Def.'s Br."), filing 39, at 1.)

2

| | |
|---|---|
| Trooper: | Yo yo policia yo policia buscar el carro?  (trans: I I police I police look the car?) |
| Defendant: | OK, go ahead. |
| Trooper: | Any problemo?  (Any problem?) |
| Defendant: | Nada de problema.  (No problem at all.) |
| Trooper: | You ah comprende? (You ah understand?) |
| Defendant: | Sí. (Yes.) |
| Trooper: | No problemo? (No problem?) |
| Defendant: | No problema.  (No problem.) |

(Filing 35, Ex. 3, Copy of Transcription of Audio Portion of Videotape, at 11.)[3]  Trooper Goltz and another trooper who arrived at the scene then searched the defendant's truck.  During the search, Trooper Goltz discovered that the truck had been modified to include a hidden compartment accessible through the fender.  He placed the defendant under arrest, and the defendant and his truck were transported to the NSP office in Grand Island.

At the Grand Island office, officers were able to access the hidden compartment in the truck.  Inside this compartment the officers discovered a quantity of cocaine.  Meanwhile, the defendant sat handcuffed in an interview room with Trooper Goltz and NSP Investigator Coby Harrow.  Trooper Goltz and the defendant discussed the defendant's <u>Miranda</u> rights in halting, broken Spanish, and although the defendant indicated that he understood the rights set forth on the NSP's Spanish Advice of Rights form, (<u>see</u> filing 35, Ex. 13), he did not sign it.  Trooper Goltz continued to discuss the defendant's rights, and other matters, with the defendant, but the defendant did not understand the trooper.  Eventually, a Spanish-speaking investigator was located and brought in to assist with the interview.  After some discussion, the defendant and the officer had the following exchange (which has been translated from Spanish):

| | |
|---|---|
| Defendant: | Or that is by signing here I don't have the right to get myself an attorney anymore or anything right? |
| Investigator: | You want to sign here – |

[3]The parties agree that the Spanish words used by the trooper and the defendant have been translated accurately.  (<u>See</u> Tr., filing 38, at 53:7-54:8.)

| | |
|---|---|
| Defendant: | Uh |
| Investigator: | – then if you sign that you are going to answer our questions. |
| Defendant: | Ah, yes I am going to answer questions |
| Investigator: | Without attorney |
| Defendant: | Without attorney |
| Investigator: | Ok but if you are we are doing questions and you don't want to answer anymore without an attorney then you say "listen I don't want to answer more [unintelligible]" |
| Defendant: | That was my question.  So I sign. |

(Filing 35, Ex. 5, Copy of Transcript of Interview, at 12:232-240.)  The defendant then signed the Miranda waiver, and he was questioned by the investigator.

The defendant moved to suppress all evidence obtained from his vehicle.  (See filing 24.) In support of this motion, the defendant argued that the evidence must be suppressed because: 1) "the defendant was unlawfully detained prior to and during the search of his vehicle"; 2) "the defendant did not voluntarily consent to the search of his truck"; 3) "the search of the engine compartment was beyond the scope of the defendant's consent"; and 4) "the search of the defendant's truck at the state patrol headquarters in Grand Island was illegal."  (See Br. of Def. in Supp. of Mot. to Suppress Evid. from Stop, filing 31, at 3-15.)  The defendant also moved to suppress the statements obtained by law enforcement officers at the State Patrol headquarters in Grand Island, Nebraska, arguing that "he did not voluntarily, knowingly and intelligently waive his Miranda rights when he signed the Miranda Waiver form."  (Br. of Def. in Supp. of Mot. to Suppress Statements, filing 30, at 1 (emphasis added).)  The magistrate judge considered the defendant's motions and recommended that they be denied.  (See generally Report, Recommendation and Order, filing 37.)  On February 14, 2006, the defendant filed objections to the magistrate judge's report and recommendation.  (See filing 39.)  My analysis of these objections is set forth below.

## II.   ANALYSIS

The defendant objects to the magistrate judge's findings that the defendant was not

4

unlawfully detained; that the defendant knowingly consented to the search of his truck; that the trooper's search did not exceed the scope of the consent provided by the defendant; that the defendant voluntarily consented to the search of his truck; and that the defendant voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights.  (See Def.'s Br., filing 39, at 1-16.)  I shall consider each of these objections in turn.

### A.    Whether the Defendant Was Unlawfully Detained

The defendant's motion to suppress the evidence obtained from his vehicle raises first the question of whether the defendant was unlawfully seized when Trooper Goltz asked him, "Do you have a minute?"  (See filing 31 at 3-8.)  The magistrate judge concluded that  "a reasonable person in the defendant's position would have felt free to say, 'No,' and continue on his way, in response to Trooper Goltz' question, 'Do you have a minute?'"  (Report, Recommendation and Order, filing 37, at 19-20.)  In support of this conclusion, the magistrate judge noted that the defendant had received all of his property from the trooper; the defendant was exiting the patrol vehicle when the trooper asked this question; the trooper did not position himself to stop the defendant from returning to his vehicle; the trooper did not tell the defendant that he was under investigation or suspicion; the trooper's tone was professional; the trooper made no threats or promises to the defendant; and the trooper did not demand the defendant's cooperation.  (See <u>id.</u> at 20.)  The magistrate judge did recognize that there were communication difficulties between the trooper and the defendant and that the defendant was never informed that he could refuse to answer additional questions and proceed on his way.  (See <u>id.</u>)  Nevertheless, he found that, in view of the totality of the circumstances, the defendant had not been "seized," and that his encounter with Trooper Goltz continued on a consensual basis.  (See <u>id.</u>)

The defendant objects to this conclusion, arguing that the magistrate judge failed to consider all of the criteria set forth in <u>United States v. Chamberlain</u>, 163 F.3d 499, 503 (8th Cir. 1998), and <u>United States v. Griffin</u>, 922 F.2d 1343, 1349 (8th Cir. 1990).  (See Def.'s Br., filing 39, at 2-6.)  However, after carefully reviewing the record, I find that the magistrate judge's conclusion is correct.

Preliminarily, I note that in <u>Chamberlain</u> and <u>Griffin</u>, the Eighth Circuit identified six factors that should be used to determine whether conversations between law enforcement officers

and defendants amount to custodial interrogations within the meaning of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  <u>See, e.g.</u>, <u>Chamberlain</u>, 163 F.3d at 503 (citing <u>Griffin</u>, 922F.3d at 1349). This is a different question from the one at hand, and it involves a different standard of proof.[4] Nevertheless, it seems to me that the six <u>Chamberlain</u> factors are not irrelevant to the determination of whether a person has been seized for Fourth Amendment purposes.  Indeed, many of the factors cited in <u>Chamberlain</u> are similar to those cited in <u>United States v. Johnson</u>, 326 F.3d 1018, 1021-22 (8th Cir. 2003), and relied upon by the magistrate judge, (see Report, Recommendation, and Order, filing 37, at 19).  Furthermore, in determining whether an encounter was consensual or a "seizure," I am to consider whether, "in view of <u>all of the circumstances surrounding the incident</u>, a reasonable person would have believed that he was not free to leave."  <u>United States v. Jones</u>, 269 F.3d 919, 925 (8th Cir. 2001) (quoting <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980)) (emphasis added).  <u>See also</u> <u>United States v. Johnson</u>, 326 F.3d 1018, 1021 (8th Cir. 2003) (citing <u>INS v. Delgado</u>, 466 U.S. 210, 215 (1984)). Therefore, my de novo review of the magistrate judge's determination takes into account the defendant's arguments based upon the <u>Chamberlain</u> factors. These factors are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

> (2) whether the suspect possessed unrestrained freedom of movement during questioning;

---

[4]In order to determine whether conversations between law enforcement officers and defendants amount to custodial interrogations for the purposes of <u>Miranda</u>, the focus is upon "the suspect's subjective belief that 'his freedom of action is curtailed <u>to a degree associated with formal arrest</u>' and whether that belief is objectively reasonable under the circumstances."  <u>United States v. Chamberlain</u>, 163 F.3d 499, 503 (8th Cir. 1998) (quoting <u>United States v. Griffin</u>, 922 F.2d 1343, 1349 (8th Cir. 1990)) (emphasis added).  In contrast, a defendant seeking to demonstrate merely that his contact with a law enforcement officer was not consensual, but instead fell within the ambit of the Fourth Amendment, must show only that, "in view of all of the circumstances surrounding the incident, a reasonable person <u>would have believed that he was not free to leave</u>."  <u>United States v. Jones</u>, 269 F.3d 919, 925 (8th Cir. 2001) (quoting <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980)) (emphasis added).  <u>Cf.</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 435-40 (1984) (explaining that a person seized during a traffic stop is not "in custody" for the purposes of <u>Miranda</u>).

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere of the questioning was police dominated; or,

(6) whether the suspect was placed under arrest at the termination of the questioning.

Chamberlain, 163 F.3d at 503 (quoting Griffin, 922 F.2d at 1349).

In this case, several circumstances weigh in favor of a finding that a reasonable person in the defendant's position would have felt free to leave during the interval between the question, "Do you have a minute?" and the trooper's request for permission to search the vehicle.  First, the trooper's questioning was not "'so intimidating, threatening, or coercive' that a reasonable person would not feel free to leave."  United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001) (quoting United States v. Hathcock, 103 F.3d 715, 718 (1997)).  The trooper did not use "language or tone of voice" indicating "that compliance with the officer's request [will] be compelled."  Id. at 926 (quoting Hathcock, 103 F.3d at 718-19).  On the contrary, the question, "Do you have a minute?" strongly indicates that compliance would not be compelled, but would be left entirely to the discretion of the defendant.

Second, the defendant "possessed unrestrained freedom of movement" during this portion of the encounter.  United States v. Chamberlain, 163 F.3d 499, 503 (8th Cir. 1998).  The evidence shows that the defendant was neither handcuffed nor locked in the patrol car.  Also, as the magistrate judge noted, the trooper did not position himself to prevent the defendant's return to his vehicle.  See United States v. Johnson, 326 F.3d 1018, 1021 (8th Cir. 2003).  (See also Report, Recommendation, and Order, filing 37, at 19, 20.)

Third, and relatedly, nothing but the defendant's voluntary acquiescence to the trooper's request for "a minute" prevented him from walking back to his vehicle and departing the scene.  See Chamberlain, 163 F.3d at 503.  When the trooper made his request, the purpose of the traffic stop had been accomplished, the defendant's papers had been returned to him, see Johnson, 326 F.3d at 1022, and the violation had been explained to him.   In short, the defendant had

everything he needed to proceed on his way.  Indeed, the defendant evidently understood that the traffic stop had concluded and that he was free to leave, because he moved to exit the patrol vehicle before the trooper requested a minute of his time.

Fourth, although the record indicates that other officers arrived on the scene at some point during the defendant's conversation with Trooper Goltz, there is no indication that the presence of the additional officers was threatening.  See Jones, 269 F.3d at 926 (8th Cir. 2001) (quoting Hathcock, 103 F.3d at 718-19).  There is no evidence that any trooper made physical contact with the defendant during this portion of the encounter.  See Johnson, 326 F.3d at 1022.

Fifth, there is no evidence that Trooper Goltz employed "strong arm tactics or deceptive stratagems" in order to secure the defendant's consent to remain and answer additional questions. See Chamberlain, 163 F.3d at 503.  The trooper's tone when addressing the defendant was polite and professional, though it did contain a clear note of incredulity when the men discussed the mileage on the defendant's vehicle.  The trooper certainly did not threaten or intimidate the defendant.  I note that the defendant argues that the trooper's failure to use a Spanish language consent to search form amounted to a deceptive stratagem, (see Def.'s Br., filing 39, at 4-5); however, at this point my analysis is focused upon whether a seizure occurred during the time interval beginning with the trooper's question, "Do you have a minute?" and ending with the trooper's request for permission to search the truck.  The issue of whether the defendant's consent to search was voluntarily given will be addressed below.[5]

Finally, I note that although the trooper and the defendant did have some difficulties communicating, the record, and Exhibits 1-3 in particular, demonstrates that the two were able to communicate reasonably well.  This case is easily distinguishable from United States v. Guerrero, 374 F.3d 584, 586-87, 589-90 (8th Cir. 2004), wherein the Eighth Circuit held that a reasonable officer would have recognized that profound communication problems prevented the officer and the suspect from communicating effectively.  Here, in contrast, a reasonable officer in

---

[5]The defendant also argues that he was seized when the trooper asked him to remain seated in the patrol car "after 'permission to search' was granted."  (See Def.'s Br., filing 39, at 5-6.)  This argument too is beyond the scope of the portion of the encounter that I am analyzing here.  It shall be revisited briefly below.

Trooper Goltz's position would have believed that the defendant agreed to remain and answer additional questions when he responded, "Okay," to the question, "Do you have a minute?"

On the other hand, some of the circumstances surrounding the encounter might have caused a reasonable person to believe that he was not free to leave when the trooper asked, "Do you have a minute?" First, it is true that the defendant was not informed specifically that he was free to refuse the trooper's request and proceed on his way. See Chamberlain, 163 F.3d at 503. However, as the magistrate judge noted, this fact alone is not sufficient to establish that the defendant had been seized. (See Report, Recommendation, and Order, filing 37, at 20 (citing United States v. Santos-Garcia, 313 F.3d 1073, 1078 (8th Cir. 2002)).

Second, the fact that the trooper's conversation with the defendant occurred inside the trooper's patrol car weighs in favor of a finding that the atmosphere was "police dominated," Chamberlain, 163 F.3d at 503, though it is also true that the encounter occurred on a public roadway at midday. I note too that the trooper was armed, but there is no evidence that the trooper made a point of displaying his weapons in order to intimidate the defendant.

Finally, in some cases a citizen's arrest at the conclusion of an encounter with law enforcement officers may suggest that the citizen would not have felt free to terminate the encounter. See Chamberlain, 163 F.3d at 503. In this case, the defendant was arrested following the troopers' examination of his vehicle and his discovery of the secret compartment. However, it seems to me that the defendant's arrest does not strongly support an inference that a reasonable person in the defendant's position would not have felt free to reject the trooper's request for a minute of time.

I have carefully considered all of the foregoing circumstances, and I find that a reasonable person in the defendant's position (and with the defendant's knowledge of English) would have felt free to leave when the trooper asked, "Do you have a minute?" and during the questioning that followed, up until the defendant responded to the trooper's request to search the truck. Therefore, this portion of the encounter between the defendant and Trooper Goltz was consensual, and did not "fall within the regulation of the Fourth Amendment." United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001).

Furthermore, it seems to me that even if the defendant had not consented to remain and

9

answer the trooper's questions about drug and firearm trafficking, the trooper's decision to detain the defendant in order to seek answers to those questions would have been justified by a reasonable suspicion of criminal activity.  See United States v. Johnson, 326 F.3d 1018, 1022 (8th Cir. 2003) ("It is well established that a law enforcement officer may stop and briefly question an individual if the officer has a reasonable suspicion that the person has committed or is about to commit a crime.").  As I noted above, the trooper was aware that the defendant was traveling on Interstate 80 from California to Sioux City, Iowa, which is a large Midwest distribution center for drugs transported from Arizona and California; that the defendant exited the interstate under suspicious circumstances and without a credible reason; that the defendant's vehicle accumulated a large number of miles in a very short period of time; that the defendant's California address was associated with a methamphetamine conspiracy; that the bed of the defendant's pickup truck seemed to contain "props"; and that the defendant gave vague and inconsistent information about his plans to reside in either California or Sioux City.  (See Report, Recommendation and Order, filing 37, at 9-10; see also Tr., filing 38, at 54:18-55:22.)  Thus, even if the defendant had not consented to the continuation of the encounter, I would find that the resulting seizure did not violate the Fourth Amendment.

### B.    Whether the Defendant Consented Knowingly to the Search of His Truck

After the defendant responded, "Okay," to the trooper's request for a minute of his time, the trooper asked the defendant a series of questions concerning the trafficking of drugs and guns.  (See Tr., Ex. 3, at 10-11.)  The defendant responded to these questions in the negative. (See id. at 11.)  The trooper then asked, "Yo yo policia yo policia buscar el carro?" which has been translated as, "I I police I police look the car?"  (Id.)  The defendant answered, in English, "OK, go ahead."  (Id.)  The following exchange then occurred:

Trooper:         Any problemo?  (Any problem?)

Defendant:     Nada de problema.  (No problem at all.)

Trooper:         You ah comprende? (You ah understand?)

Defendant:     Sí. (Yes.)

Trooper:         No problemo? (No problem?)

Defendant:     No problema.  (No problem.)

10

(Id.)  The magistrate judge considered the trooper's question, "Yo yo policia yo policia buscar el carro?" and concluded that "buscar" adequately communicated the trooper's request for permission to search the defendant's truck.  (See Report, Recommendation, and Order, filing 37, at 22-23.)  He also determined that the defendant understood that the trooper was requesting permission to search his truck despite the grammatical flaws in the trooper's request.  (See id. at 23-26.)  In view of these findings, the magistrate judge concluded that the defendant's statements, "go ahead," and "No problem at all," amounted to a knowing consent to the search of the truck.

The defendant objects to the magistrate judge's conclusion because, he argues, the words "Yo yo policia yo policia buscar el carro" were not interrogative, but declarative.  (See Def.'s Br., filing 39, at 7-9.)  He claims that the trooper "basically advised [the defendant] that he was police and he was going to look at his car," and argues that the trooper essentially stated, "You've told me you have no guns or drugs so I'm going to look at your car.  Any problem with that?"  (Id. at 8-9.)

I have reviewed the videotape of the defendant's conversation with the trooper, and I find that the defendant's objection, which would be better framed as an objection to the magistrate judge's conclusion that the defendant consented voluntarily to the search,  is without merit.  It is true that "[t]he government bears the burden of showing consent was freely and voluntary given and not a result of duress or coercion, and the burden cannot be discharged by showing mere acquiescence to a claim of lawful authority."  United States v. Escobar, 389 F.3d 781, 785 (8th Cir. 2004) (citations omitted).  However, in this case the videotape of the stop clearly demonstrates that the trooper asked "Yo yo policia yo policia buscar el carro?" in an interrogative tone, and his series of follow-up questions, which were also interrogative in tone, leave no room for doubt that the defendant did not merely acquiesce to a claim of lawful authority.  I find that the defendant understood the trooper's request well enough to respond to it knowingly, and that the request was not framed in declarative or mandatory terms.

The voluntariness of the defendant's consent will be analyzed in greater detail below. (See infra Part II.D.)

11

**C.    Whether the Trooper's Search Exceeded the Scope of the Defendant's Consent**

The magistrate judge determined that the defendant's response, "OK, go ahead," to Trooper Goltz's question, "Yo yo policia yo policia buscar el carro?" amounted to a "general consent" to search the vehicle, as opposed to a more limited request for permission "to look at" the defendant's truck.  (See Report, Recommendation, and Order, filing 37, at 27-28.)  The defendant objects to this determination, arguing that 1) the trooper's search exceeded the scope of the consent provided by the defendant; and 2) the defendant was not in a position to limit or withdraw his consent because he had been ordered to remain in the patrol car during the search. (See Def.'s Br., filing 39, at 9-11.)  I shall consider each of the defendant's arguments in turn.

First, as the defendant correctly notes, the scope of a consent to search is measured "using a standard of objective reasonableness, considering what an objectively reasonable person would have understood the consent to include."  United States v. Urbina, 431 F.3d 305, 310 (8th Cir. 2005).  See also United States v. Alverez, 235 F.3d 1086, 1088 (8th Cir. 2000) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the suspect?").  The defendant argues that no reasonable person who agreed to allow a trooper to "look" at a car would have understood that the trooper would be free to "rais[e] the hood" and "attempt[] to dismantle the vehicle in search [of] a secret compartment."  (Def.'s Br., filing 39, at 10.)  I disagree.  First, I note that the defendant's characterization of the troopers' initial search of the vehicle is exaggerated; the search lasted for a relatively brief period of time,[6] and NSP officers did not attempt to "dismantle the vehicle" until after evidence of a secret compartment had been discovered.  At that point the officers had probable cause to believe that the vehicle contained contraband.  See Urbina, 431 F.3d at 310; Alverez, 235 F.3d at 1089.  Moreover, I find that in view of the series of questions concerning drugs and guns that preceded the troopers request for permission to search the defendant's truck,

---

[6]At the hearing before the magistrate judge, the trooper testified that he spotted the secret compartment a few minutes after he began his search.  (See Tr., filing 38, at 44:18-25.)  The videotape of the encounter indicates that the defendant was arrested within twelve minutes of the beginning of the search.

an objectively reasonable person in the defendant's position would have understood that the trooper was asking for permission to look everywhere in the vehicle where drugs or guns might be hidden.  See United States v. Alcantar, 271 F.3d 731, 738 (8th Cir. 2001).  There is no evidence that the defendant limited the scope of the search that he would be willing to permit. See Florida v. Jimeno, 500 U.S. 248, 251-52 (1991).  I therefore find that the defendant consented generally to a search of his truck, and Trooper Goltz's examination of the engine compartment, firewall, and fender of the defendant's truck did not exceed the scope of the defendant's consent.

Second, the defendant argues that his failure to object to the continuation of the search should not weigh in favor of a finding that the search did not exceed the scope of the defendant's consent.  (See Report, Recommendation, and Order, filing 37, at 27.)  I agree.  It is true that the defendant did not object to the search as it progressed, and courts have held that "failing to object to the continuation of a consent search makes the continued search 'objectively reasonable.'" Alcantar, 271 F.3d at 738 (citing United States v. Gleason, 25 F.3d 605, 607 (8th Cir. 1994)). However, since Trooper Goltz asked the defendant to remain in the patrol car during the search, the defendant's failure to object as the search proceeded provides little support for a finding that the search did not exceed the scope of the consent.  Nevertheless, I remain convinced that an objectively reasonable person in the defendant's position would have understood that his consent included an examination of the engine compartment of the vehicle.  As I noted above, the defendant did not limit his consent, but consented to a general request for permission to look over the vehicle for guns or drugs.  An "objectively reasonable person" would understand this as a request for permission to look in places where guns or drugs might be concealed.  I therefore find that the search did not exceed the scope of the defendant's consent, even when the inference that may ordinarily be drawn from defendant's failure to object to the continuation of the search is discounted.

### D.  Whether the Defendant Consented Voluntarily to the Search of His Truck

The magistrate judge determined that the defendant consented voluntarily to the search of his truck.  (See Report, Recommendation, and Order, filing 37, at 28-31.)  His analysis begins with a clear statement of the applicable law.  Specifically, he noted first that the determination

13

must be based upon "the totality of the circumstances," and that the government bears the burden of showing "that the defendant behaved in such a manner that the officer reasonably believed that the search was consensual."  (Id. at 28 (quoting United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005)).)  He then listed the following factors that may be used to evaluate "the reasonableness of the officer's belief":

> [W]e consider the characteristics of the person consenting, including the party's age, intelligence and education, whether he was under the influence of drugs or alcohol, whether he was informed of his right to withhold consent, and whether he was aware of rights afforded criminal suspects.  We also consider the environment in which the alleged consent took place, specifically (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently . . . as the search occurred.

(Id. (quoting Esquivias, 416 F.3d at 700).)  The defendant agrees that the foregoing framework is the correct one for evaluating the voluntariness of his consent; however, he argues that the magistrate judge did not give "full consideration to all of the relevant factors."  (Def.'s Br., filing 39, at 11.)[7]  I have considered the defendant's arguments, and I agree with the magistrate judge that under the totality of the circumstances, Trooper Goltz reasonably believed that the search was consensual.

The following factors weigh in favor of a finding that the trooper reasonably believed that the search was consensual.  First, the defendant was not of a vulnerable age, nor was he under the influence of drugs or alcohol.  Second, the defendant was not detained for a lengthy period of time.  As the magistrate judge noted, the trooper's request for permission to search occurred approximately twenty-five minutes after the defendant was initially stopped.  Third, there is no evidence that the trooper threatened, physically intimidated, or punished the defendant.  On the contrary, the trooper conversed with the defendant in a polite, professional manner.  Fourth, there

---

[7]Once again, the defendant argues that the magistrate judge failed to consider the Chamberlain and Griffin factors, which I have set forth in a previous section of this memorandum.  (See Def.'s Br., filing 39, at 13-14.  See also supra Part II.A.)  Since the analysis I am to conduct here is based upon the "totality of the circumstances," I will consider the defendant's arguments based on Chamberlain and Griffin.

is no evidence that the trooper made promises or misrepresentations to the defendant. He simply asked the defendant whether certain drugs or guns were being carried in the truck and then asked for permission to look at the truck. Fifth, the defendant was clearly not in custody or under arrest when the consent was given. It is true, as the defendant argues, that the consent was given while the defendant was seated in a patrol car with the door closed. (See Def.'s Br., filing 39, at 13.) It is not inaccurate to label this a "police dominated atmosphere." However, as I noted previously, the trooper's request for permission to search came during a consensual encounter, and a reasonable person would have felt free to terminate that encounter. (See supra Part II.A.) Finally, the consent occurred in a public place during the middle of the day, as opposed to a secluded, dark, or otherwise threatening venue that might have pressured the defendant to yield to the officer's request.

The magistrate judge also found that the fact that the defendant sat by silently during the search suggested that his consent was voluntary. (See Report, Recommendation, and Order, filing 37, at 30.) It is quite true that the defendant did not protest during the search, and there is no evidence that the defendant was locked in the patrol car or was otherwise prevented from revoking–or attempting to revoke–his consent. However, as I explained above, the defendant might not have felt free to protest the search after he was asked to remain in the patrol car. (See supra Part II.C.) Therefore, I find that the defendant's silence weighs neither for nor against a finding that the defendant consented to the search voluntarily.

It seems to me that the following circumstances weigh against a finding that the trooper reasonably believed that the search was consensual. First, defendant's experience with the English language is limited, and he is not highly educated. Also, the defendant was not informed of his right to withhold consent, and there is no evidence that the defendant was aware of the rights afforded criminal suspects.

In addition to these facts, the defendant submits that he was misled by the trooper's "deceptive stratagem" of proceeding without a Spanish consent to search form. (See Def.'s Br., filing 39, at 14.) While I agree with the defendant (and the magistrate judge) that it would have been wise for the trooper to use a Spanish consent form, I find that the trooper held an objectively reasonable belief that the defendant understood their conversation. I see no evidence

15

that the failure to use the form was meant to trick or deceive the defendant.

The defendant also argues that the fact that he was arrested "at the termination of questioning" weighs against a finding that the consent was given voluntarily. (Def.'s Br., filing 39, at 14.) However, I have already determined that the consent was given during a voluntary encounter between the defendant and the trooper, and I fail to see how the arrest following the discovery of the truck's secret compartments weighs against a finding that, at the time consent was given, the trooper reasonably believed that the search was consensual.

Finally, the defendant seems to suggest that his consent was rendered invalid when the trooper asked him to sit in the patrol car while the search was carried out. (See Def.'s Br., filing 39, at 11.) The defendant offers no support for this proposition, and I fail to see how a prior consent to search is rendered invalid by a subsequent request to remain seated in a patrol car while that search proceeds.

After considering the totality of the circumstances, and especially those summarized above, I find that the defendant consented voluntarily to the search of his vehicle. Trooper Goltz reasonably believed that the search was consensual in view of the following circumstances: the defendant responded promptly and enthusiastically to the trooper's request for permission to search and to the trooper's follow-up questions; the detention lasted for a relatively brief length of time; there were no threats, and there was no intimidation, misrepresentation or trickery; the consent to search was provided during a consensual encounter; the defendant was not of an age that might render him especially susceptible to coercion; there are no indications of insobriety; and the encounter occurred on a public highway during the daytime. It is true that the defendant was not informed of his rights, that the consent was given while the defendant was seated in a patrol car, and that the defendant's understanding of English and his general level of education are limited. Nevertheless, taken as a whole the circumstances show that consent was voluntarily given without coercion. However, I agree with the magistrate judge's comment that the question is a rather close one. (See Report, Recommendation, and Order, filing 37, at 29.)

   **E.   Whether the Defendant Voluntarily, Knowingly, and Intelligently Waived His Miranda Rights**

The defendant objects to the magistrate judge's conclusion that the defendant voluntarily waived his Miranda rights prior to his questioning at the NSP office in Grand Island. (See Def.'s

16

Br., filing 39, at 14-16; Report, Recommendation, and Order, filing 37, at 31-33.)  The defendant's argument is based mainly upon the notion that his "Spanish heritage, lack of education and unfamiliarity with the English language[,] and the interpreter's ineffective communications" prevented him from making an effective waiver.  (Def.'s Br., filing 39, at 14.)  I am not persuaded.

"In Miranda, the Court held that police officers must inform a suspect of his Fifth Amendment privilege against self-incrimination prior to initiating a custodial interrogation.  A suspect may then waive these rights provided that the waiver is knowing, voluntary, and intelligent."  Thai v. Mapes, 412 F.3d 970, 976-77 (8th Cir. 2005) (citation omitted).  "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception."  Id. (citation omitted).

In this case, the record establishes clearly that the defendant was informed of his Miranda rights.  The defendant's primary language is Spanish, and he testified that he can read in that language.  (See Tr., filing 38, at 111:11-15; 112:23-113:7.)  Prior to his interrogation, the defendant read aloud in Spanish a form advising him of his rights.  The defendant also signed a form, printed in Spanish, indicating that he had been informed of his rights.  (See Ex. 13.)  However, the defendant submits that his waiver was not knowing, intelligent, or voluntary because of his inability to communicate with the NSP officers.  (See Def.'s Br., filing 39, at 14-16)  I shall therefore review de novo the magistrate judge's determination that the defendant's waiver was knowing, intelligent, and voluntary.

According to the video recording and the transcription of the interview between NSP officers and the defendant, the interview unfolded as follows.  The NSP officers introduced themselves, and the defendant acknowledged that they were law enforcement officers.[8]  The

---

[8]The transcript of the interview indicates that the defendant responded to many of the officers' questions and statements with the sound, "uh."  (See, e.g., Ex. 5, lines 8, 10, 12.)  However, the videotape shows that many of these are actually affirmative responses accompanied a nodding of the defendant's head.  (See generally Ex. 4.)

17

officers then had the defendant read aloud, in Spanish, a form advising him that he had a right to remain silent; that his statements could be used against him; that he had a right to talk with an attorney before answering questions and have an attorney present during questioning; that an attorney would be provided for him if he could not afford to pay one; and that if he chose to answer questions without an attorney present, he had the right to stop the questioning and speak with an attorney.  The defendant can be seen writing on the form after he read each separate advisement.  One of the officers then told the defendant, in a broken combination of English and Spanish, that there were many problems because of the cocaine in the car and that the police wanted the defendant's cooperation.  The officer then asked the defendant to read in Spanish the next portion of the form, which consisted of an acknowledgment that the defendant had been advised of his rights; that he understood those rights; that he was willing to answer questions without an attorney present; and that no promises had been made to him.  After the defendant read the acknowledgment, the trooper told the defendant again that the police wanted his help and needed his cooperation, and he asked the defendant whether he understood.  The defendant responded that he did not understand, stating, "I don't know where I have to go."  (See Ex. 5 at 4, line 66.)[9]  The officer then attempted to explain to the defendant that he wanted the defendant to answer questions.  He added that he wanted the defendant to take his truck to its final destination so that the officers could arrest the defendant's friends, and he invited the defendant to ask him a question.  The defendant responded, "I don't know."  The officer then asked the defendant whether he understood the rights set forth on the acknowledgment form.  The defendant indicated that he understood the rights, but he did not understand "why you stop me" or "what I have to do."  (See id. at 5, lines 85-100.)  The officer then explained that the defendant would not be asked any questions if he did not agree to answer them or if he did not sign the acknowledgment form, because the defendant did not have a lawyer.  He then repeated that the officers wanted the defendant to take the truck to "wherever it is going" so that they could arrest the defendant's friends when they got the cocaine.  The defendant said, "That's why you want me to sign, eh?" (Id. at 7, line 140.)  The officer responded, "I, well, want you to sign if you will talk to us if we

---

[9]My citations will be to the transcript, as I have no means of citing specifically to the relevant portions of the videotape.

ask you questions.  I can't ask you questions.  You understand that?"  (Id. at 7, line 141.)  He then had the defendant read from the acknowledgment form again.  The defendant stated that he understood the form, but added that the officer wanted to know whether "everything is my fault or something like that."  (See id. at 8, lines 145-154.)  The trooper attempted again to explain that he did want to know who the cocaine came from and who the cocaine is for, but that he wanted first for the defendant to indicate whether he would talk without an attorney.  The defendant indicated that he did not understand exactly what the officer was saying.  After another brief attempt to explain what he wanted, the officer indicated that a Spanish-speaking officer would be joining them.

After an interruption, the tape resumes with the defendant engaged in a conversation in Spanish with another investigator.  It is very difficult to hear the investigator, though I am confident that not all of his words appear in the transcription of his half of the conversation.  (Compare Ex. 4 with Ex. 5 at 11, lines 205-223.)  In any event, it seems that the investigator attempted to explain that they could not "do any questions" if the defendant wanted an attorney, but that the defendant should sign the form if he wanted to answer questions.  He also attempted to explain that the time that the defendant might have to spend in jail would not be the officer's decision.  The defendant then asked the investigator a question that has been translated as follows, though it is very difficult to hear on the tape: "Or that is by signing here I don't have the right to get myself an attorney anymore or anything right?"  (Ex. 5 at 12, line 232.)  The investigator responded, "You want to sign here . . . then if you sign that you are going to answer our questions."  (Id. at 12, lines 233-235.)  The defendant then interjected, "Ah, yes I am going to answer questions."  (Id. at 12, line 236.)  The investigator added, "Without attorney," and the defendant repeated, "Without attorney."  (Id. at 12, lines 237-238.)  The investigator then said, "Ok, but if you are we are doing questions and you don't want to answer anymore without an attorney then you say, 'listen, I don't want to answer more . . . .'"  (Id. at 12, line 239.)  The defendant responded, "That was my question.  So I sign."  (Id. at 12, line 240.)  The defendant then signed the waiver of rights form.

The defendant characterizes the gist of his conversations with the officers as follows: "[W]e can't ask you any questions if you want an attorney but if you want to help us and we

19

presume you are going to help us then the time you spend in jail is up to the Judge or the Government's attorney."  (Def.'s Br., filing 39, at 16.)  He argues that this makes no sense and asserts that the officers suggested that the defendant would be disadvantaged at sentencing if he invoked his right to counsel and refused to sign the waiver form.  I disagree with this characterization, and I note that the defendant's version of the interview does not account for his own reading and re-reading of the Miranda rights, his oral and written acknowledgments that he understood those rights, and the swift dissipation of his reluctance to sign the form when the investigator answered his question about his right to end the questioning and obtain an attorney later in the interview.  I also disagree with the defendant's argument that the officers implied that the defendant's sentence would be reduced if he waived his Miranda rights.  On the contrary, the officers strove to convey precisely the opposite message.  The defendant waived his rights knowingly and intelligently.

The record also establishes clearly that the defendant's waiver was not the product of intimidation, coercion, or deception.  (See generally Exs. 4, 5.)  Indeed, it seems that the defendant's only argument that the waiver was involuntary is based on the notion that the defendant was deceived when the officers represented that there would be "some apparent disadvantage to the Defendant in sentencing if he wants an attorney and doesn't agree to sign the waiver."  (Def.'s Br., filing 39, at 16.)  As I noted above, the defendant's argument is without merit.

The defendant's Miranda rights were explained to him, he acknowledged that he understood those rights both orally and in writing, and he did not agree to waive those rights until his question about his ability to cease the interview and obtain counsel had been answered.  He then expressly waived his Miranda rights.  In view of the foregoing, I find that the defendant's waiver was made with "full awareness of both the nature of the right being abandoned and the consequences of abandoning the right."  Thai v. Mapes, 412 F.3d 970, 976-77 (8th Cir. 2005).  I also find that "the waiver was a product of the [defendant's] free and deliberate choice, and not the product of intimidation, coercion, or deception.  Id.

In sum, I find that the trooper's questions about drugs and guns at the conclusion of the traffic stop occurred during a consensual encounter; that the defendant knowingly and voluntarily

consented to a search of his vehicle for drugs and guns; that the troopers' search did not exceed the scope of the defendant's consent; and that the defendant knowingly, intelligently, and voluntarily waived his <u>Miranda</u> rights prior to the questioning at the NSP office in Grand Island. I must therefore  overrule the defendant's objections to the magistrate judge's report and recommendation and deny the defendant's motions to suppress.

**IT IS ORDERED** that:

1.     The defendant's objections to the magistrate judge's report and recommendation, filing 39, are overruled;

2.     The magistrate judge's report and recommendation, filing 37, is adopted; and

3.     The defendant's motions to suppress, filings 24 and 25, are denied.

Dated March 13, 2006.

                    BY THE COURT


                    s/ Warren K. Urbom
                    United States Senior District Judge

21